5 F.3d 534
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 AMERICAN STATES INSURANCE COMPANY, Plaintiff-Appellee,
v.
CRAWLEY CONSTRUCTION, INC., Defendant-Appellant.
 No. 92-15404.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1993.
Decided Sept. 2, 1993.
 
 Before: GOODWIN, HUG, and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Crawley Construction, Inc. ("Crawley") appeals the district court's grant of summary judgment to American States Insurance Co. ("American States") in this action brought by American States seeking a declaration that it had no duty to defend Crawley in an underlying action arising out of a failed construction project. For the reasons set forth below, we affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 Crawley was hired by E.H. Morrill Co. ("Morrill"), which was in turn retained by S.J. Amoroso Construction Co., Inc./Verrett Construction Co. ("Amoroso/Verrett"), to help install an underground fuel tank at a bus facility owned by Alameda-Contra Costa County Transit District ("Alameda Transit"). Under its contract with Morrill, Crawley was to excavate a hole, shore it up, line it with a secondary containment liner made of rubber and a concrete hold-down pad, set a tank in the hole, and backfill the excavation. As a result of perforations and tears sustained during the construction process, the liner leaked, and, despite efforts to repair it, ultimately had to be replaced with a different containment system.
 
 
 4
 Crawley has conceded in its briefs on appeal and in factual submissions to the district court that the liner was damaged through its own negligence. Crawley's workers used doubleheaded nails in constructing the wooden form for the concrete hold-down pad; the nails protruded and perforated the rubber lining underneath the structure. Crawley also admits to having torn the liner while removing the gypsum board shoring from the excavation.
 
 
 5
 After Morrill refused to pay Crawley the entire contract price, Crawley sued Morrill, Amoroso/Verrett, Alameda Transit, and Titan Rubber & Supply Co., Inc. ("Titan"), the manufacturer of the liner, in state court, alleging that the rubber liner was "not suitable for the job." (Appellee's Excerpts of Record ("Appellee's E.R.") Ex. N. at 15.) Both Morrill and Amoroso/Verrett cross-complained against Crawley and other parties in state court, alleging causes of action for breach of contract, negligence, indemnity, and declaratory relief. By letter, American States accepted Crawley's tender of the defense in the state court action subject to a full reservation of rights.
 
 
 6
 Approximately three years after the inception of the state court action, American States filed the declaratory judgment action that is the subject of this appeal. In its original complaint, American States sought only a declaration that it had no duty to defend or indemnify Crawley. During the pendency of the federal litigation, the state court action settled, with American States contributing $50,000 to a settlement pool on behalf of Crawley. American States subsequently amended its complaint in federal court to request reimbursement for the monies it had expended defending Crawley and settling the action.
 
 
 7
 Crawley cross-complained in the federal court for bad faith breach of contract, asserting that American States had violated its agreement to defend Crawley by filing the declaratory judgment suit. Before the court heard the parties' cross-motions for summary judgment, Crawley dismissed the cross-complaint without prejudice.
 
 
 8
 After a hearing, the district court granted summary judgment to American States, holding that there was no duty to defend and that American States was entitled to recover $90,032.41 from Crawley. In so doing, the court rejected Crawley's contention that American States was foreclosed from seeking reimbursement because it had initially sought only declaratory relief.
 
 
 9
 Crawley appeals the court's grant of summary judgment to American States and the denial of its summary judgment motion.
 
 DISCUSSION
 A. Duty to Defend
 
 10
 Crawley contends that American States had an obligation to defend it in the state court action because at least some of the damages that Morrill and Amoroso/Verrett alleged in that action were or might have been for property damage that was within the scope of the American States policy.[1] We review de novo the district court's grant of summary judgment to American States and the conclusions of law upon which it was based. Saul v. United States, 928 F.2d 829, 832 (9th Cir.1991).
 
 
 11
 The standards governing an insurer's duty to defend under California law are set forth in a recent decision of the California Supreme Court. A California insurer owes "a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081, 17 Cal.Rptr.2d 210, 213, 846 P.2d 792, 795 (Mar. 11, 1993). The duty to defend is considered broader than the duty to indemnify; an insurer may owe a duty to defend even if no damages are ultimately recovered. Id. The Horace Mann court explained that "[t]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." Id. at * 7-* 8. Facts extrinsic to the complaint can give rise to a duty to defend if they reveal a possibility that the claim may be covered by the policy. Id. at * 8.
 
 
 12
 The policy issued by American States was a comprehensive general liability policy for businesses. It insured Crawley against "property damage ... caused by an occurrence." (C.R. 64 ex. A.) The policy defines property damage as
 
 
 13
 physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or ... loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
 
 
 14
 (Id.) An occurrence is "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Id.)
 
 
 15
 The critical inquiry in this case is whether the terms of the policy gave rise to a potential for coverage. American States takes the position that one or more of several policy exclusions precluded coverage and eliminated any duty to defend.[2] Two of the exclusions cited by American States are relevant to this case, y(2)(d)(i) and y(2)(d)(iii).[3] They exclude from coverage property damage to
 
 
 16
 (d) that particular part of any property, not on premises owned by or rented to the insured,
 
 
 17
 (i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations; or
 
 
 18
 ....
 
 
 19
 (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.
 
 
 20
 (C.R. 64 Ex. A.) In effect, these "work product" exclusions precluded coverage if Crawley or someone working on its behalf damaged property while working on it or performed faulty work that necessitated repair or replacement of the property.
 
 
 21
 In Blanchard v. State Farm Fire & Casualty Co., 2 Cal.Rptr.2d 884 (Ct.App.1991), the California Court of Appeal construed and upheld the validity of an exclusion identical to subparagraph (iii). The court explained that, as a result of the exclusion,
 
 
 22
 the insurance policy was not a performance bond or guarantee of the work of the general contractor or subcontractors. The contractor bears the risk of repairing or replacing faulty workmanship, while the insurer bears the risk of damage to the property of others. If, for instance, faulty workmanship in the framing or drywall led to rainwater leaking in and damaging a homeowner's furnishings, appellant would be indemnified for the damage to the furnishings, but not for the cost of repairing or replacing the faulty workmanship.
 
 
 23
 Id. at 886 (citations omitted); see also Western Employers Ins. Co. v. Arciero & Sons, Inc., 194 Cal.Rptr. 688, 689-90 (Ct.App.1983) (upholding similar work product exclusion; noting that such an exclusion "gives the contractor an incentive to exercise care in workmanship thereby reducing the risk that is covered: damage to property of third parties").
 
 
 24
 Crawley argues that the exclusions do not apply because the damage to the liner did not occur while Crawley was performing operations on the liner; rather, Crawley contends, the use of doubleheaded nails in the form for the hold-down pad and removal of the gypsum board shoring that resulted in the damage to the liner occurred after the liner was already in place. Crawley further asserts that the liner was distinct from the hold-down frame and shoring, that is, a separate "part" of the project, such that the exclusions do not apply.
 
 
 25
 We do not find Crawley's reasoning persuasive. The liner was perforated when the doubleheaded nails and shoring used by Crawley in the installation process came into contact with it. The nails and the shoring were required to complete the installation. The damage to the liner thus was a direct result of operations performed by Crawley upon it within the meaning of subparagraph (i). It was not incidental to the faulty workmanship, as in the case of water damage to the contents of a house due to negligently installed drywall.
 
 
 26
 For similar reasons, we conclude that the second exclusion, subparagraph (iii), also operates to defeat coverage. The liner was repaired and ultimately replaced as a result of Crawley's substandard workmanship. The damage to the liner was caused by "faulty workmanship thereon."[4]
 
 
 27
 In light of our determination that there was no potential for coverage under the American States policy because of the work product exclusions, we need not reach the parties' additional arguments concerning coverage.
 
 B. Estoppel
 
 28
 Pointing to the letter in which American States acknowledged that there was "a sufficient possibility of coverage to trigger a duty to defend" in the underlying action, (Appellant's E.R. J at 98), Crawley contends that the insurer was not free to pull out and seek a declaratory judgment, especially in view of the fact that American States defended the state action for some years.
 
 
 29
 The primary difficulty with Crawley's estoppel theory is that the letter in question further stated that
 
 
 30
 [i]n the event that the coverage issues are ultimately decided in favor of American States, we shall look to your clients for reimbursement of attorneys' fees, costs, and any moneys we have paid pursuant to a reasonable settlement or judgment and which are not within the terms or conditions of this policy. It is expressly understood that the coverage issues may not be resolved or be capable of any resolution prior to the resolution by judgment and/or settlement of the action in question.
 
 
 31
 (Id. at 103.) This language provided unequivocal notice that American States might do just what it did, namely, stop defending and seek reimbursement. American States reiterated its reservation in the cover letters accompanying the remittances to Crawley's attorney.
 
 
 32
 An insurer is entitled under California law to obtain reimbursement from the insured for attorney's fees and settlement payments incurred on behalf of the insured. Johansen v. California State Auto. Ass'n Inter-Ins. Bureau, 123 Cal.Rptr. 288, 295 (1975); North Atl. Casualty & Sur. Ins. Co., 743 F.Supp. 1361, 1366-67 (N.D.Cal.1990) (applying California law). The fact that an insurer has undertaken a defense does not mean it is obligated to continue it if the insurer has reserved its right to contest coverage. "[T]he court cannot ... use the fact that the insurer provided coverage for the insured to prove that there was coverage." North Atl., 743 F.Supp. at 1364. Crawley's contention that American States is estopped from seeking reimbursement is without merit.
 
 C. Reimbursement
 
 33
 Crawley contends that it was improper for the court to order reimbursement in a declaratory judgment action.
 
 
 34
 The Declaratory Judgment Act provides that a district court may grant "[f]urther necessary or proper relief based on a declaratory judgment or decree ... after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. Sec. 2202. Here, American States amended its complaint to include a claim for reimbursement. The issue was briefed by both parties in anticipation of the summary judgment hearing. Crawley thus had notice of the claim and an opportunity to be heard. We therefore conclude that the reimbursement order constituted "further proper relief" in this case. See Omaha Indem. Ins. Co. v. Cardon Oil Co., 687 F.Supp. 502, 505 (N.D.Cal.1988) (holding that insurer's request for reimbursement after obtaining declaratory relief was "proper" under section 2202), aff'd, 902 F.2d 40 (1990).
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Crawley does not contest the district court's ruling that American States had no duty to indemnify it. It does, however, advance an estoppel argument, discussed below, in support of its contention that it should not be obligated to reimburse American States for any of the $90,032.41, which included settlement costs
 
 
 [2]
 American States argued below on summary judgment that these exclusions applied, but the district court did not address their applicability in its ruling
 
 
 [3]
 The other two mentioned by American States, exclusions m and z, do not appear to apply to the facts of this case. Exclusion m pertains only to "loss of use of tangible property which has not been physically injured or destroyed." (C.R. 64 ex. A.) The parties are in agreement, however, that the rubber liner was damaged during the construction process. Exclusion z concerns "completed operations hazard." (Id.) American States concedes that the operations were not completed at the time the liner was damaged
 
 
 [4]
 In reaching our conclusion that American States had no duty to defend, we rely in part on facts outside those pleaded in the Morrill and Amoroso/Verrett cross-complaints. In Horace Mann, the California Supreme Court called attention to a split in the lower California courts as to whether extrinsic evidence may be used to defeat the duty to defend. Compare Fire Ins. Exch. v. Jiminez, 229 Cal.Rptr. 83, 86 & n. 2 (Ct.App.1986) (extrinsic evidence justified denial of defense); Saylin v. California Ins. Guar. Ass'n, 224 Cal.Rptr. 493, 497-98 (Ct.App.1986) (same); State Farm Mut. Auto. Ins. Co. v. Flynt, 95 Cal.Rptr. 296, 302-03 (Ct.App.1971) (same) with Jenkins v. Insurance Co. of North Am., 272 Cal.Rptr. 7, 11-12 (Ct.App.1990), review denied, No. S016492, 1990 Cal. LEXIS 3925 (Aug. 20, 1990) (extrinsic evidence may create, but not eliminate, duty to defend); California Ins. Guar. Ass'n v. Wood, 266 Cal.Rptr. 250, 252 (Ct.App.1990) (same); CNA Casualty of Cal. v. Seaboard Sur. Co., 222 Cal.Rptr. 276, 279-80 (Ct.App.1986) (same). The Supreme Court expressly declined to resolve the issue in Horace Mann, 1993 Cal. LEXIS at * 12, but has since granted review in a case involving this very question, Montrose Chem. Corp. v. Superior Court, 10 Cal.Rptr.2d 687 (Ct.App.), review granted, 12 Cal.Rptr.2d 681 (1992)
 Because we unfortunately do not have the benefit of the California Supreme Court's thinking on this issue, we must try to predict how it will decide Montrose. We rely on that line of authority that permits us to consider extrinsic evidence that defeats, as well that which creates, coverage. We do so for the reasons expressed by the court of appeal in the decision now under review:
 ... [N]either logic, common sense, nor fair play supports a rule allowing only the insured to rely on extrinsic facts to determine the potential for coverage.... [W]here extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, we see no reason to prevent an insurer from seeking summary adjudication that no potential for liability exists and thus that it has no duty to defend. We see the critical distinction as not whether extrinsic evidence may be considered, but whether such evidence presents undisputed facts which conclusively eliminate a potential for liability.
 Montrose, 10 Cal.Rptr.2d at 693 (citations omitted). We predict that the California Supreme Court will find the court of appeal's reasoning persuasive. We also note that it would be particularly anomalous in the instant case to ignore the extrinsic evidence and hold that there is a duty to defend, when the facts which Crawley admits and upon which it seeks to rely are those that operate to eliminate coverage.